**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL IRANIAN AMERICAN COUNCIL<br>1629 K St NW, Suite 503<br>Washington, DC 20006<br><div align="right">*Plaintiff,*</div><br><div align="center">v.</div><br>UNITED STATES DEPARTMENT OF STATE<br>   The Executive Office<br>   Office of the Legal Advisor<br>   Suite 5.600, 600 19th St NW<br>   Washington, DC 20522<br><div align="right">*Defendant.*</div> | Civil Action No.: 1:24-cv-632<br><br><br><br><br><br><br>**COMPLAINT: VIOLATION OF THE FREEDOM OF INFORMATION ACT (FOIA)** |

## INTRODUCTION

Plaintiff, NATIONAL IRANIAN AMERICAN COUNCIL ("NIAC" or "Plaintiff") alleges as follows:

1.      This is an action under the Freedom of Information Act, 5. U.S.C. § 552 *et. seq.* ("FOIA"), to obtain an order for the production of an agency record from the United States Department of State, Office of Information Programs and Services in response to a request properly made by Plaintiff related to: communications, memorandums, and contracts referencing Form DS-5535, *Supplemental Questions for Visa Applicants* ("DS-5535"); communications, memorandums, and contracts that reference Presidential Proclamation "Ending Discriminatory Bans on Entry to the United States" (P.P. 10141); communications, memorandums, and contracts referencing the pre-interview enhanced automated screening and vetting process for immigrant

and nonimmigrant applicants ("the enhanced screening and vetting process"); and requests seeking

the production of Subsections 304.3-1 and 304.5-9(D) of the Foreign Affairs Manual ("FAM").


## JURISDICTION & VENUE

2.      This court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. §

1331 (federal question).

3.      This Court has jurisdiction to grant declaratory, injunctive, and further necessary

or proper relief pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. §§ 2201-2202, and Federal Rules

of Civil Procedure 57 and 65.

4.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §

1391(e).


## PARTIES

5.      Plaintiff NIAC is a 501(c)(3) non-governmental organization headquartered in

Washington D.C. NIAC is a nonpartisan, nonprofit organization founded in 2002 to give a voice

to the Iranian-American community.

6.      Defendant United States Department of State ("DOS") is an agency within the

meaning of FOIA. *See* 5 U.S.C. § 552(f). It does not fall under any exception to the statutory

definition of an agency within the meaning of FOIA. *See* 5 U.S.C. § 551(1). The Department of

State Office of Information Programs & Services has custody and control of the specific agency

records requested by Plaintiff pursuant to FOIA. *See* 22 C.F.R. §171.2. [1]

---

[1] *See also* U.S. Department of State, Freedom of Information Act, which states, "The Department
of State maintains records dealing with: Formulation and execution of U.S. Foreign Policy;

7.      FOIA requires that agencies respond to FOIA requests within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A).

8.      Defendant United States Department of State has failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(B). Plaintiff is therefore deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

### **FACTUAL ALLEGATIONS**

9.      On October 27, 2023, Plaintiff submitted a FOIA request which was assigned case number **F-2024-01094**.

10.     The information Plaintiff requested in this FOIA relates to extensive backlogs on Iranian immigrant visa interviews and adjudications caused in part by policies implemented by President Trump's Executive Order 13780, and Proclamations 9645, 9723, and 9983 (collectively "the Muslim ban"). The Muslim ban was later revoked by President Biden on January 20, 2021, "Executive Order 13780, and Proclamations 9645, 9723, and 9983 are hereby revoked." Presidential Proclamation, Ending Discriminatory Bans on Entry to the United States, Proclamation Number 10141, 86 FR 7005 (January 20, 2021).

11.     Despite the revocation, the policies created by the Muslim ban are still actively in place and being used including form DS-5535 and the enhanced screening and vetting process.

---

**Administration and operations of the Department of State and U.S. Missions abroad**; Consular assistance given to U.S. Citizens abroad; In general, permanent records 25 years and older, pre-1925 passport and pre-1940 visa records are property of National Archives and Records Administration (NARA); **Current and former employees of the Department of State**; Applications from U.S. Citizens for U.S. Passports; **Visa requests from non-citizens to enter the U.S.,**" https://foia.state.gov/Request/FOIA.aspx (last accessed Aug. 1, 2023) (emphasis added).

12.     Family reunification has been a key principle underlying U.S. immigration policy since 1965. *See generally The Immigration and Nationality Act Amendments of 1965* (Pub. L. 89-236).  It remains a cornerstone of the INA today.

13.     Congress built on this cornerstone The Immigration Act of 1990, now known as the INA. Pub. L. 101-649 Among Congress's chief goals was reunifying families. *See, e.g., Solis-Espinoza v. Gonzales,* 401 F.3d 1090, 1094 (9th Cir. 2005).

14.     Per the INA, the Administrative Procedure Act ("APA"), and relevant regulations and policies, the U.S. Department of State has a mandatory duty to adjudicate immigrant visa applications within a reasonable time. *See Mohamed v. Pompeo,* No. 1:19-cv-01345-LJO-SKO, 2019 U.S. Dist. LEXIS 167266 (E.D. Cal. Sep. 27, 2019) (issuing a mandatory injunction ordering the State Department to complete adjudications of immigrant visa applications);  5  U.S.C  § 555(b) (requiring agencies to, "within a reasonable time ... conclude the matter presented to it"); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry ("Nine Iraqi Allies")*, 168 F. Supp. 3d 268, 293 n. 22, 295–96 (D.D.C. 2016).

15.     While 22 U.S.C. § 2651(a) grants the Secretary some discretion to carry out the INA abroad, that discretion is not without limits.

16.     22 U.S.C. § 2651(a)(1) states that the Department of State "must" administer "in accordance with [the INA], the provisions of which govern the allotment of immigrant visas, setting a "finely reticulated regulatory scheme governing the admission of foreign nationals." *See Hawaii v. Trump*, 878 F.3d 662, 685 (9th Cir. 2017); *cf. Arizona v. United States*, 567 U.S. 387, 395 (2012).

17.     There is also a "strong presumption that Congress intends judicial review of administrative action" that can be overcome only by "clear and convincing evidence that Congress

intended" such action to be unreviewable. *See Am. Hosp. Ass'n v. Azar*, 967 F.3d 818, 823-24 (D.C. Cir. 2020)(internal quotations omitted). *See also Dep't of Com. v. New York*, 139 S. Ct. 2551, 2568 (2019) (holding that exceptions to judicial review are interpreted "quite narrowly" and are generally limited to categories of decisions that are "traditionally" left to agency discretion.)

18.     The Department of State's conduct undermines a foundational principle of the INA by separating U.S. citizens from their spouses indefinitely.

19.     The Department of State's lack of communication and clarity has left U.S. citizens, Iranian national spouses, and their attorneys and advocates with limited information to understand the source of the delay.

20.     While some of the aggrieved families have access to counsel, many do not.

21.     According to the U.S. Department of State's Travel Advisory system, many Iranian national spouses caught in the visa backlog live in areas where routine travel and daily life are dangerous.

22.     The United States Department of State provides travel advisories to all U.S. citizens who will be visiting foreign countries.

23.     Travel to Iran has been rated by the U.S. Department of State as **"Iran – Level 4: Do Not Travel."** This is the highest travel advisory level. The advisory also warns:

> "Do not travel to Iran due to the risk of **terrorism, civil unrest, kidnapping** and the **arbitrary arrest of U.S. citizens**. Exercise increased caution due to **wrongful detentions**.
> **…**
>
> **Country Summary:** U.S. citizens should not travel to Iran for any reason. U.S. citizens visiting or residing in Iran have been kidnapped, arrested, and detained on spurious charges.

Iranian authorities continue to unjustly detain and imprison U.S. nationals, particularly dual national U.S.-Iranian nationals--including students, journalists, business travelers, and academics--on charges including espionage and posing a threat to national security. Iranian authorities routinely delay consular access to detained U.S. nationals and consistently deny consular access to dual U.S.-Iranian nationals.

Violent extremist groups, including U.S. government-designated terrorist organizations, operate in Iran. ISIS and affiliated groups have claimed responsibility for bombings and other attacks in Iran. The threat of terrorist activity persists, as does the risk of death or injury to bystanders.
The U.S. government does not have diplomatic or consular relations with the Islamic Republic of Iran. The U.S. government is unable to provide routine or emergency consular services to U.S. citizens in Iran."

*See* Iran Travel Advisory (January 11, 2024), U.S. Dept. of State.
https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/iran-travel-advisory.html (emphasis in original).

24.     The Department of State's lack of urgency and transparency in addressing the Visa backlog shows a complete and utter disregard for the safety and family unity of U.S. citizens and their Iranian national spouses.

25.     Visa applicants and their U.S. citizen spouses simply want the information they need to make informed decisions and move on with their lives.

26.     As it stands today, they are forced to live in limbo, turning down professional opportunities and postponing family planning because they have no way of knowing how much longer they will be separated. Their dreams are indefinitely deferred, which takes a profound psychological toll on individuals and families.

27.     Even if some delays are unavoidable, foreign nationals and their families would be in a much better position to manage their lives and expectations if the government gave them the information that they need to make informed decisions.

28.     Further, a reasonable amount of transparency would likely save the U.S. government and their contractors valuable time and resources, which is otherwise spent responding to swaths of case status inquiry emails, expedited requests, and lawsuits.

29.     Considering the time sensitivity and humanitarian concerns, Plaintiff filed their FOIA request which was confirmed to be received by Defendant on October 27, 2023. **Exhibit A**, *Response to Electronic FOIA Request*.

30.     Through Defendant's Public Access Link (PAL) portal, Plaintiff was informed their estimated delivery date is December 12, 2023. **Exhibit B**, *PAL FOIA Check Status Page*.

31.     Defendant has not provided Plaintiff with any additional updates or estimated timeline for completion.

32.     It has now been over **four months** since Defendant received the FOIA request, and is **83 days** past their estimated time of delivery.

33.     Under FOIA, Defendant had twenty days to respond to Plaintiff's request. Despite the statutory timeline, the significant public interest of this request, and the collateral consequences of the U.S. government's failure to timely issue these immigrant visas for immediate relatives of U.S. citizens living in conflict zones, Defendant has yet to provide a response.

34.     Plaintiff now files this suit to order Defendant to undertake an adequate search and produce responsive records without delay. In so doing, Plaintiff intends to use this information for to provide the public clarity regarding the growing visa backlog and its relationship with the continuing implementation of the Muslim Ban, as well as the interplay of any directives that do not align with the INA or express intent of Congress. The plaintiff's goal is to promote transparency and accountability.

## CLAIM FOR RELIEF

### Violation of FOIA
### (Failure to Provide Timely Response to FOIA Request)

35.     Plaintiff repeats, realleges, and reincorporates the allegations in the foregoing paragraphs as though fully set forth herein.

36.     Defendant is an agency subject to FOIA. Therefore, it is obligated to "promptly" release, in response to a FOIA request, any disclosable records in its possession at the time of the request. *See* 5 U.S.C. § 552(a)(3).

37.     Defendant is permitted to withhold record or parts of records only if one of the enumerated FOIA exemptions apply. Defendant must provide a lawful reason for withholding any other materials as to which it is claiming an exemption. *See* 5 U.S.C. § 552(b).

38.     No exemptions permit the withholding of the record sought by the Request.

39.     FOIA requires that agencies respond to FOIA requests within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A).

40.     Under 5 U.S.C. § 552(a)(6)(A)(i), Defendant must decide within 20 days of a request whether the agency will produce responsive documents.

41.     An extension of this timeline is permitted only "[i]n unusual circumstances" where the agency provides "written notice." Such notices allow the agency to extend the response deadline for ten additional working days. 5 U.S.C. § 552(a)(6)(B)(i): *see also, e.g., Hajro v. U.S. Citizenship & Immigration Servs.*, 881 F. 3d 1086, 1092 (9th Cir. 2016) ("The statutory time limits require an agency to determine within twenty days whether to comply with a FOIA request or, in the alternative, notify the requester of any 'unusual circumstances' requiring an extension in responding to the request.").

42.     In this case, over 92 business days have elapsed without a substantive reply or update from Defendant.

43.     Defendant failed to demonstrate why Plaintiff's request for electronic records from a government agency that routinely operates internationally in the year 2023 is unusual. Defendant also fails to demonstrate that their delay is permissible or lawful.

44.     Defendant United States Department of State has failed to meet the statutory deadlines set by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)-(B). Plaintiffs are therefore deemed to have exhausted all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

45.     Therefore, Plaintiff is entitled to an order compelling Defendant to produce the record responsive to the Request.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grants the following relief:

a.     Assume jurisdiction over this matter;

b.     Declare that the record sought by the Request, as described in the foregoing paragraphs, is public under 5. U.S.C. § 552 and must be disclosed;

c.     Order Defendant to undertake an adequate search for the requested record and provide all responsive records and corresponding documents to Plaintiff's FOIA request within 20 business days of the Court's order;

d.     Award Plaintiff attorney's fees and costs, as expressly permitted by FOIA under 5 U.S.C. § 552(a)(4)(E) and on any other basis justified under the law; and

e.     Grant any other or further relief that this Court deems just and proper.

Dated: March 5, 2024

                                    */s/ Curtis Lee Morrison*_____
                                    Curtis Lee Morrison
                                    **RED EAGLE LAW, L.C.**
                                    5256 S. Mission Road,
                                    Suite 135
                                    Bonsall, CA 92003
                                    curtis@redeaglelaw.com
                                    Phone: 714-661-3446
                                    *Attorney for Plaintiffs*